IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Katie D.,[1]

    Plaintiff,

v.

**COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,**

    Defendant.

**Civ. No. 6:19-cv-01599-MC**

**OPINION AND ORDER**

**MCSHANE, Judge**:

    Plaintiff Katie D. brings this action for judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

    Plaintiff alleges that the Administrative Law Judge ("ALJ") erred by: (1) failing to credit Plaintiff's subjective symptom testimony; (2) failing to credit the examining opinion of Dr. Scott Alvord; and (3) improperly crafting Plaintiff's residual functional capacity. Pl.'s Br. 4–21, ECF No. 16. Because there is substantial evidence in the record to support the ALJ's findings and any errors are harmless, the Commissioner's decision is AFFIRMED.

## PROCEDURAL AND FACTUAL BACKGROUND

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case.

1 – OPINION AND ORDER

Plaintiff applied for DIB on April 25, 2016, alleging disability since January 25, 2014. Tr. 66. Her claim was denied initially and upon reconsideration. Tr. 95, 102. Plaintiff timely requested a hearing before an ALJ and appeared before the Honorable Katherine Weatherly on October 11, 2018. Tr. 32–64. ALJ Weatherly denied Plaintiff's claim by a written decision dated October 23, 2018. Tr. 15–26. Plaintiff sought review from the Appeals Council and was denied on June 19, 2019, rendering the ALJ's decision final. Tr. 2, 3. Plaintiff now seeks judicial review of the ALJ's decision.

Plaintiff was 35 years old at the time of her alleged disability onset and 39 years old on March 31, 2018, the date last insured. *See* tr. 66. Plaintiff did not complete high school and has not obtained a GED. Tr. 188, 36. Plaintiff has worked as an assistant manager, a clerk, and a customer service assistant. Tr. 41–42. Plaintiff alleges disability due to endometriosis, bowel resection, ulcerative colitis, interstitial cystitis, ureteral injury, cervical scarring, migraines, ulcers, depression, and anxiety. Tr. 66–67.

**STANDARD OF REVIEW**

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Ahearn v. Saul*, No. 19-35774, 2021 WL 609825, at *1, (9th Cir. Feb. 17, 2021) (reaffirming the substantial evidence standard in social security cases). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To

determine whether substantial evidence exists, the court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986)). "'If the evidence can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012). The burden of proof rests on the claimant for steps one through four, and on the Commissioner for step five. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). At step five, the Commissioner's burden is to demonstrate that the claimant can make an adjustment to other work existing in significant numbers in the national economy after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is considered disabled. *Id.*

## I. Plaintiff's Credibility

Plaintiff argues that the ALJ failed to identify specific, clear and convincing reasons to reject Plaintiff's subjective symptom testimony. An ALJ must consider a claimant's symptom testimony, including statements regarding pain and workplace limitations. *See* 20 CFR §§ 404.1529(a), 416.929(a). Where there is objective medical evidence in the record of an

3 – OPINION AND ORDER

underlying impairment that could reasonably be expected to produce the pain or symptoms alleged and there is no affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of her symptoms. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

The ALJ "may consider a range of factors in assessing credibility." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). These factors can include "ordinary techniques of credibility evaluation," *id.*, as well as:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter,* 504 F.3d at 1040.

It is proper for the ALJ to consider the objective medical evidence in making a credibility determination. 20 C.F.R. §§ 404.1529(c)(2); 416.929(c)(2). However, an ALJ may not make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). The Ninth Circuit has upheld negative credibility findings, however, when the claimant's statements at the hearing "do not comport with objective evidence

in her medical record." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009).

Here, the ALJ found that Plaintiff's statements regarding the intensity, persistence and limiting effects of her conditions were not consistent with the medical and other evidence in the record. Tr. 20. The ALJ found that Plaintiff's symptom testimony regarding her pain and physical ailments was not supported by the objective medical evidence. Tr. 20. The ALJ examined Plaintiff's medical records, noting that "no further surveillance [of Plaintiff's remaining ovary] was recommended," that "labs and stool sample were normal," that an endoscopy "showed a normal esophagus, normal stomach and normal duodenal bulb and second part of the duodenum," and that a colonoscopy showed a normal colon. Tr. 20–21. The ALJ also noted that Plaintiff had complained of joint pain in March 2018 but that she reported in April 2018 that the pain had resolved except in her right thumb. Tr. 21. While an ALJ may not rely solely on a lack of objective evidence to discredit subjective symptom testimony, it may be a factor. The ALJ extensively considered Plaintiff's medical records and found that her symptoms were inconsistent with the objective medical evidence.

The ALJ also found Plaintiff's symptom testimony to be inconsistent with her activities of daily living. Tr. 20. A claimant's daily activities may be grounds for an adverse credibility finding if she "is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quoting *Fair*, 885 F.2d at 603); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict

claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113 (citing *Turner v. Comm'r of Sec. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010)).

Plaintiff's testimony, statements, and treatment records are filled with contradictions. Plaintiff alleges she is "bedridden most days" and "basically [doesn't] go out of the house," but as the ALJ notes, "treatment records do not support this level of functioning." Tr. 100, 45, 22. In her function report, Plaintiff stated that she cooks, cleans, and does laundry daily, and that she goes shopping three to five times a week. Tr. 232. Treatment notes from Pacific Women's Center show Plaintiff exercises by dancing, running, and cycling. Tr. 282, 283. 286, 289. Other treatment notes show Plaintiff bikes, walks, and practices yoga for exercise. Tr. 380. At a counseling session on January 7, 2016, Plaintiff reported "she has maintained a highly physical workout regimen." Tr. 218. In her original application for DIB, Plaintiff states she stopped working due to childcare issues and her condition. Tr. 188. In her function report, Plaintiff asserted that her brother and mother help her care for her daughter. Tr. 230. Two years later, at the hearing before ALJ Weatherly, Plaintiff asserted that she "takes care of [her daughter] 100 percent" and that she helps care for her "very ill" mother "in exchange for… a place to live." Tr. 51, 37. Plaintiff alleges that she has severe migraines most days, but the most recent treatment notes show that she typically has one migraine a month, lasting for a couple days. Tr. 229. 547. Plaintiff's level of physical activity does not support her statements regarding the severity of her symptoms. Further, the inconsistencies between Plaintiff's testimony, her previous statements, her activities of daily living, and her medical records suggest that Plaintiff's testimony lacks credibility.

The ALJ also found that Plaintiff's "lack of mental health treatment suggests that her mental impairments are not as limiting as she alleged." Tr. 20. An ALJ may consider minimal or inconsistent treatment in evaluating claimant credibility. *Burch*, 400 F.3d at 381. "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F. 3d 1428, 1434 (9th. Cir. 1995)). Similarly, "fail[ure] to follow prescribed treatment that might improve symptoms" may be evidence that the symptoms are not as severe as alleged. SSR 16-3p, 2017 WL 5180304. The ALJ noted that Plaintiff attended four counseling sessions with Jenae Ulrich in early 2016, focused on managing her pain, and then asked to transfer to a long-term therapy provider. Tr. 22. Plaintiff attended five sessions at Looking Glass between December 2016 and February 2017, but then stopped attending. Tr. 22. Plaintiff was discharged in April 2017 after a number of cancelled appointments and repeated attempts by the therapist to contact her and reschedule. Tr. 486, 472. Plaintiff has a history of not following up with medical referrals. The ALJ noted that while Plaintiff was advised to seek treatment from a gastroenterologist in November 2015, she had not followed that advice by April 2016, despite continuing to seek treatment for gastrointestinal dysfunction, nausea, vomiting, and abdominal pain. Tr. 20–21. Plaintiff's treatment providers made a referral for acupuncture in July 2016, but although the facility left Plaintiff several messages, she never scheduled an appointment. Tr. 391, 383. Similarly, a referral was made for physical therapy in September 2016 but despite several messages, Plaintiff did not follow through with the recommendation. Tr. 522. Plaintiff's limited mental health treatment and her lack of follow through with medical referrals suggest her symptoms are not as severe as alleged.

7 – OPINION AND ORDER

The ALJ also noted the inconsistency between Plaintiff's function report in May 2016, which focused on Plaintiff's physical ailments, and Plaintiff's hearing testimony where she alleged disabling mental impairments. Tr. 23. The ALJ's characterization of Plaintiff's mental impairments as an "afterthought" in her function report is accurate. Tr. 23. In response to the question "How do your illnesses, injuries, or conditions limit your ability to work?" Plaintiff's response does not mention any mental health impairments. Tr. 229. Throughout the report, any limitations Plaintiff describes are attributed to pain. Tr. 229–236. Plaintiff's mental health is only mentioned twice. After Plaintiff stated that she wakes every night "due to pain, incontinence, migraine, or vomiting," she noted she was seeking therapy for anxiety and post-traumatic stress. On the final page, Plaintiff noted she has anxiety around males and fears males, hospitals, and doctors. Tr. 235. In contrast, at the hearing, Plaintiff alleged she does not leave the house "because psychologically it's gotten really bad for me." Tr. 45. At the hearing, Plaintiff attributed some of her struggles while working to her mental health challenges, stating that if customers "made [her] feel anxious or frightened, [she] would leave the workplace for the day." Tr. 47. As the ALJ noted, there is nothing in the medical records to suggest that Plaintiff's "mental impairments have worsened during the evaluative period" or to explain how Plaintiff's characterization of her impairments changed from 2016 to 2018. Tr. 23. In fact, Plaintiff's hearing testimony shows that she experienced anxiety while working at substantial gainful activity level and still did not find it disabling when she completed her function report. This inconsistency suggests Plaintiff's symptoms are not as severe as alleged.

In discrediting Plaintiff's subjective symptom testimony, the ALJ extensively cited Plaintiff's medical records that did not support the alleged symptoms, as well as the specific

inconsistencies between Plaintiff's hearing testimony, prior statements, and treatment records. The ALJ gave specific, clear and convincing reasons, supported by substantial evidence, to discount Plaintiff's testimony.

## II. Dr. Alvord's Opinion

Plaintiff argues the ALJ failed to consider the opinion of Dr. Alvord under the appropriate factors. Pl.'s Br. 5. An ALJ must weigh the following factors when considering medical opinions: (1) whether the source has an examining relationship with claimant; (2) whether the source has a treatment relationship with claimant; (3) supportability (as shown by relevant evidence and explanation); (4) consistency with the record as a whole; (5) specialization; and (6) other factors, including the source's familiarity with other information in the record. 20 C.F.R. § 404.1527(c)(1)–(6). The ALJ discounted Dr. Alvord's opinion because it was based on a one-time examination, did not cite to Plaintiff's medical records, was based on Plaintiff's self-reported symptoms, and was inconsistent with Plaintiff's activities of daily living, the mental status exams of treating providers, and Dr. Pamela Roman's findings. Tr. 24. This reasoning shows the ALJ considered the required actors. The ALJ considered the examining relationship and found that Dr. Alvord's opinion was inconsistent with the examining opinion of Dr. Roman and the mental status exams of Plaintiff's treating providers. In considering supportability and Dr. Alvord's familiarity with the record, the ALJ noted that Dr. Alvord's opinion did not cite to the medical evidence and instead relied on Plaintiff's self-reported symptoms. The ALJ considered the record as a whole and found Dr. Alvord's opinion inconsistent with the medical and other evidence.

Plaintiff further argues that the ALJ failed to identify clear and convincing, or even specific and legitimate, reasons for discounting Dr. Alvord's opinion. Pl.'s Br. 8–12. "To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* When evaluating conflicting medical opinions, an ALJ need not accept a brief, conclusory, or inadequately supported opinion. *Id.* The ALJ found Dr. Alvord's opinion to be contradicted by the examining opinion of Dr. Roman. Tr. 24. Plaintiff maintains that there are no inconsistencies between the opinions of Dr. Alvord and Dr. Roman. Pl.'s Reply 3–4, ECF No. 20. The Court disagrees. While Dr. Roman found Plaintiff's insight was good and that Plaintiff had no difficulty with impulse control or judgment, Dr. Alvord found Plaintiff to have impaired insight. Tr. 369. 566. Dr. Roman noted, "When [Plaintif] was asked about other possible symptoms of bipolar disorder she did not indicate symptoms of hypersexuality, over spending or grandiose plans." Tr. 368. Dr. Alvord, on the other hand, found "it is clear that [Plaintiff] suffers from Bipolar Affective Disorder," citing "a long history of excessive energy, increased productivity, sexual promiscuity, and not appreciating the consequences of her actions." Tr. 564. Dr. Roman and Dr. Alvord could be describing two different people. Dr. Alvord's opinion was contradicted by Dr. Roman's and thus the ALJ needed to provide specific and legitimate reasons for discounting it.

Plaintiff takes issue with the ALJ's assertion that Dr. Alvord did not cite to the medical records and with the ALJ's wording that "because claimant received so little mental health

treatment, Dr. Alvord's opinion is necessarily based on claimant's self-reported symptoms." Pl.'s Br. 8–9. At the beginning of Dr. Alvord's psychological evaluation he notes that he received the psychodiagnostics assessment prepared by Dr. Roman and the counseling session notes from Looking Glass. Tr. 563. However, the remainder of Dr. Alvord's evaluation contains no citation or reference to any of these records. Tr. 563–68. In fact, Dr. Alvord's evaluation shows a lack of familiarity with Plaintiff's medical records. Dr. Alvord notes that Plaintiff "evidently has no history of psychiatric treatment" but has "a desire to talk to a therapist." Tr. 564. Dr. Alvord does not address the Looking Glass counseling sessions that he reviewed, nor the prior sessions with Jenae Ulrich that were not part of his review of medical records. Further, as discussed above, in diagnosing Plaintiff was Bipolar Affective Disorder, Dr. Alvord does not address the discrepancy with Dr. Roman's evaluation that he supposedly reviewed. Tr. 564. Finally, though the ALJ's choice of wording was poor in stating that Dr. Alvord's opinion "necessarily" came from Plaintiff's self-reports because of her limited mental health treatment, Dr. Alvord states that his diagnosis comes from his "comprehensive interview." Tr. 564. Throughout Dr. Alvord's evaluation, information is consistently attributed to Plaintiff's own statements and descriptions, with no reference to any other evidence. Tr. 563–68.

      The ALJ found Dr. Alvord's opinion inconsistent with Plaintiff's activities of daily living, treating providers' mental status exams, and Dr. Roman's findings. Tr. 24. Plaintiff argues that this finding lacks specificity. Pl.'s Br. 10–12. The ALJ cited to numerous places in the record where "treating providers consistently note that [Plaintiff] is alert and oriented and in no acute distress" to contrast with Dr. Alvord's opinion regarding Plaintiff's mental status. Tr. 22. To the extent the ALJ erred by failing to directly contrast Dr. Alvord's opinion with the other

evidence in the record, such error is harmless. As discussed above, Plaintiff's self-reported symptoms that form the basis of Dr. Alvord's opinion are inconsistent with her own prior statements, her activities of daily living, and treatment notes. When an ALJ properly discounts a claimant's subjective symptom testimony, the ALJ may also discount medical opinions that are based on that same testimony. *Fair*, 885 F.2d at 605. There are also the noted inconsistencies between Dr. Roman's examining opinion, which was based on psychological tests and objective medical evidence, and Dr. Alvord's opinion.

In discounting Dr. Alvord's opinion, the ALJ considered the appropriate factors and gave several specific and legitimate reasons, all supported by substantial evidence.

### III. Plaintiff's RFC

Plaintiff argues that, in crafting the RFC, the ALJ failed to address Plaintiff's ups and downs and inability to sustain. Pl.'s Br. 21; Pl.'s Reply 16–17. This argument is a reiteration of previous arguments. The ALJ found Plaintiff's subjective symptom testimony lacked credibility. The ALJ crafted the RFC to include those limitations that were supported by the record. The ALJ found Plaintiff "had the RFC to perform light work… except the claimant is limited to understanding, remembering and carrying out only simple, routine, repetitive tasks." Tr. 19. The ALJ further limited Plaintiff's RFC to include "no more than occasional contact with coworkers or the public." Tr. 19. In crafting the RFC, the ALJ cited to Plaintiff's own function report, the objective physical medical evidence, and Dr. Roman's opinion regarding Plaintiff's limitations. Tr. 19–24.

Finally, Plaintiff argues that the ALJ failed to consider the side effects of Plaintiff's migraine medication. Pl.'s Br. 16; Pl.'s Reply 17. At the hearing, ALJ Weatherly questioned

Plaintiff extensively about her use of sumatriptan and its side effects. Tr. 52–53. A side effect of sumatriptan is drowsiness; when Plaintiff takes it she sleeps for "a couple hours." Tr. 53. However, sumatriptan is an as-needed medication, prescribed to be taken at the early onset of a migraine. *See, e.g.,* tr. 294. Plaintiff typically has one migraine a month. Tr. 547. Plaintiff was prescribed sumatriptan on June 25, 2018. Tr. 548. At the hearing on October 11, 2018, Plaintiff reported taking it "once and it worked for [her] pretty good" and "another time and it didn't." Tr. 52. In three and a half months, Plaintiff only took the medication twice, supporting the treatment notes regarding the frequency of her migraines. Plaintiff overstates the effect of the medication's side effects on her daily life. The ALJ's RFC finding is supported by substantial evidence.

## CONCLUSION

For these reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 23rd day of March, 2021.

s/ Michael J. McShane
Michael J. McShane
United States District Judge